AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
7/15/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: DTA DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
7/15/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: JD DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

United States of America

v.

QUANG XUAN VU,

Defendant(s)

Case No. 8:22-mj-00495-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of December 18, 2021, in the county of Orange in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii) | Possession with Intent to Distribute Methamphetamine. |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Farshid Hashempour, TFO FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: July 15, 2022

*Karen E. Scott*
Judge's signature

City and state: Santa Ana, California

Hon. Karen E. Scott, U.S. Magistrate Judge
*Printed name and title*

M. Rabbani x 33499

**A F F I D A V I T**

I, Farshid Hashempour, being duly sworn, hereby declare and state as follows:

## I.  INTRODUCTION

1.  I am a Detective with the Santa Ana Police Department ("SAPD") and also a federally deputized Task Force Officer ("TFO") presently working with the Federal Bureau of Investigation ("FBI").  As a TFO with the FBI, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2.  I am assigned to the Orange County Violent Gang Task Force ("OCVGTF").  The OCVGTF is composed of federal and local law enforcement agencies, including, but not limited to, the FBI, the SAPD, and detectives from the Anaheim Police Department.  The OCVGTF is responsible for, among other things, investigating violations of federal law committed by criminal street gangs, the Mexican Mafia, and other violent criminal organizations in Orange County.  Prior to this assignment with the FBI, I was a SAPD Police Officer and have been so employed for approximately twenty-one years.

3.  I have specialized training and experience in investigations of narcotics trafficking and criminal street gangs.  During my tenure as a Police Officer, as well as an FBI TFO, I have conducted and participated in numerous investigations of criminal activity, specifically including

narcotics trafficking and violent offenses committed by street gangs. Since joining the OCVGTF in 2010, I have specialized in investigations of the Mexican Mafia and its subordinate gangs in Orange County. As part of these investigations, I have also learned about the drug trafficking organizations that supply street gangs with illegal narcotics.

## II. **PURPOSE OF AFFIDAVIT**

4.  This affidavit is made in support of a criminal complaint and arrest warrant against QUANG XUAN VU ("VU") for a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(viii) (Possession with Intent to Distribute Methamphetamine.

5.  The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, my personal knowledge, and my training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. **SUMMARY OF PROBABLE CAUSE**

6.  On December 18, 2021, a Buena Park Police Department ("BPPD") Officer was working uniformed patrol when he observed a vehicle without a front license plate. The Officer conducted a records check of the vehicle's rear license plate number and learned that the vehicle was registered to VU, who was on Post

2

Release Community Supervision ("PRCS"). The BPPD Officer conducted a traffic stop on the vehicle, which was being driven by VU.

7. The Officer asked why VU was on probation. VU responded that he was on probation for the sale of methamphetamine. VU exited the car and was asked by the BPPD Officer if he could search VU's vehicle. VU consented to the search of his vehicle. During the search of his vehicle, BPPD Officers found a digital scale, methamphetamine, and heroin. Officers also found a loaded 9mm Glock handgun to the rear of the front passenger seat. A records check of the Glock 9mm handgun revealed that it had been reported stolen in the city of Garden Grove, California, on November 13, 2021.

8. VU was placed under arrest at the scene, and transported to the Buena Park Police Department, where he was advised of his Miranda Rights. VU acknowledged his rights and denied ownership of the handgun, methamphetamine and heroin found in the vehicle. VU did acknowledged that the digital scale found in the center console belonged to him. The substances collected from VU's vehicle were later sent to the Drug Enforcement Administration ("DEA") Southwest Lab for quantitative and qualitative analysis.

IV. **STATEMENT OF PROBABLE CAUSE**

9. I have reviewed the police report prepared by BPPD related to the incident occurring on or about December 18, 2021,

involving the arrest of VU.  Based on my review of the report, I have learned the following facts:

       a.   On December 18, 2021, at approximately 2:32 a.m., BPPD Corporal T. Carney was working uniformed patrol in a marked unit when he observed a gray Chevy Suburban, bearing California license plate 8TAY781, travelling eastbound on Crescent Avenue.  Corporal Carney noticed the Chevy Suburban did not have a front license plate, in violation of California Vehicle Code ("CVC") § 5200(a), when the vehicle stopped for a red light at Beach Boulevard.  Corporal Carney made a U-turn and continued to follow the Chevy Suburban, which also had tinted front windows, in violation of CVC § 26708(a)(1).  As Corporal Carney continued to follow the vehicle, he conducted a records check on the registered owner, VU, which revealed that he was on PRCS probation.

       b.   Corporal Carney conducted a traffic stop on the Chevy Suburban for the aforementioned CVC violations.  Corporal Carney contacted the driver, who was identified by a California Driver's License ("CDL") as VU.  VU was the registered owner and the only occupant in the vehicle.  When asked about his probation status, VU told Corporal Carney that he was on probation for the sales of methamphetamine.  Corporal Carney asked VU if he had anything illegal in the vehicle.  VU responded that he did not have anything illegal in the vehicle, and also confirmed that nobody else had been in the vehicle, who may have left something behind.  After the arrival of BPPD Officer J. Davis, Corporal Carney asked VU to exit his vehicle.

4

Upon exiting the vehicle, Corporal Carney obtained consent from VU to conduct a pat-down search of his person. VU complied and was found in possession of approximately $1,000 in US Currency. Based on my training and experience, persons involved in the sales of drugs often possess a large amount of cash from the proceeds of drug sales. Corporal Carney seated on a curb near VU's vehicle and asked if he could search his vehicle, to which VU consented.

      c.   During the subsequent search of VU's Chevy Suburban, Corporal Carney found a digital scale inside the center console. Corporal Carney observed a significant amount of a white crystalline residue consistent with methamphetamine on the scale. Based on my training and experience, drug dealers commonly use digital scales to weigh-out amounts of drugs for later sale. Corporal Carney also located a Glock, model 17, 9mm handgun, bearing serial number BPVR337, to the rear of the front passenger seat. The Glock firearm was loaded with a total of 10 rounds of 9mm ammunition. In the rear passenger compartment, Corporal Carney found a Milwaukee drill box, which contained a Ziploc plastic freezer bag containing large quantity of a white crystalline substance resembling methamphetamine. The white crystalline substance in the Ziploc freezer bag was later found to weigh approximately 458 grams.

      d.   Corporal Carney continued his search of the vehicle and found a black Coach shoulder bag, which contained a pack of Marlboro cigarettes and a black Wiko cell phone. Inside the box of cigarettes were two plastic Ziploc baggies. One

5

Ziploc bag contained approximately 2.7 grams of a white crystalline substance believed to be methamphetamine while the other Ziploc bag contained a black tar substance believed to be half of a gram of heroin.  Corporal Carney located another plastic bindle of white crystalline substance believed to be methamphetamine in a black eyeglasses case that was found behind the rear seats of the Chevy Suburban.

    e. After VU was placed under arrest, Corporal Carney conducted a search of VU's person and found a blue Apple iPhone in rear pocket of VU's pants.  VU was transported to the Buena Park Police Department, where Corporal Carney read VU his Miranda Rights.  VU acknowledged his Miranda Rights and denied ownership of the firearm, methamphetamine and heroin found in his vehicle.  VU did acknowledge ownership of the Milwaukee drill box, which contained the large amount of the substance believed to be methamphetamine.  VU stated that he purchased the drill three or four days prior to the traffic stop and explained that the drill was in a tool bag in the back of the Suburban.  VU also confirmed that he smokes Marlboro cigarettes.  A Marlboro cigarette box in VU's vehicle was found to contain two plastic Ziploc baggies of substances believed to be methamphetamine and heroin.  A records check of the Glock's serial number, which was found in VU's vehicle, revealed that the firearm had been reported stolen on November 13, 2021, in the city of Garden Grove, California.  Based upon my training and experience, persons involved in the sales of drugs often carry guns as a form of protection.

10.  The substances believed to be methamphetamine were later weighed together and found to cumulatively weigh approximately 508 grams.  The substances found in the vehicle and believed to be heroin were later weighed together and found to weigh approximately 7 grams.  I obtained the narcotics seized during this investigation from the Buena Park Police Department, which were later sent to the DEA Southwest Lab for quantitative and qualitative analysis.  The qualitative analysis of the exhibit believed to be heroin revealed that the substance consisted of 3 grams of fentanyl and .36 grams of heroin.  The results of the second exhibit submitted for analysis determined that it was 462 grams of methamphetamine with a purity of 97%, which constitutes 448 grams of pure substance.

11.  Based on my training and experience, which includes observing methamphetamine, I submit that there is probable cause to believe that the narcotics taken during the search of VU's vehicle and his property are in fact methamphetamine.  Additionally, 448 grams of methamphetamine is a distribution amount and too large of a quantity for personal use.  Based upon my training and experience, I believe that VU was using the firearm for protection when he engages in the sales of narcotics.

### V.  CONCLUSION

12.  For all the reasons described above, there is probable cause to believe that VU has committed a violation of Title 21,

United States Code, Section 841(a)(1), (b)(1)(A)(viii) (Possession with Intent to Distribute Methamphetamine).

/s/
FARSHID HASHEMPOUR
Task Force Officer, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 15th day of July, 2022.

*Karen E. Scott*

HON. KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE